258 So.2d 539

STATE of Louisiana

v.

Bernie L. WILLIAMS.

No. 51271.

Feb. 21, 1972.

Norman A. Pettingill, New Orleans, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

Bernie L. Williams was charged with the crime of possession of a narcotic drug (heroin) in violation of R.S. 40:962.[1] He was convicted of attempted unlawful possession of heroin, and sentenced to serve seven and one-half years at hard labor in the Louisiana State Penitentiary. On this appeal he relies on five bills of exceptions to obtain a reversal of the conviction.

Bill of Exceptions No. 1 was reserved when the trial court overruled appellant's motion to suppress certain evidence which consisted of an envelope, fourteen capsules which contained a white powder and a gum wrapper. He claims the evidence was seized as an incident to an unlawful arrest and search without a warrant and without probable cause.

The evidence taken during the hearing of the motion to suppress consists of the testimony of the arresting officers. It reveals that the arrest of the appellant was made under the circumstances hereafter set out: On November 7, 1969, Officers Paul Erskine and Donald O'Rourke were cruising slowly in a police patrol car in the neighborhood of the Robin Hood Bar which is located off the corner of Jackson and Simon Bolivar Avenues, in the City of New Orleans. As they approached the bar, appellant was just coming out of it and, when he saw the police vehicle he made an abrupt stop, turned suddenly and ran back into the bar. Erskine (the passenger of the police vehicle) got out of the car and ran into the establishment. As he approached appellant, who had a small object in his hand, the latter voluntarily handed it over to Erskine stating that he had just bought it for twelve dollars. Er-

---

1. This was prior to the amendment and reenactment of the "Uniform Narcotic Drug Law" by Act 457 of 1970.

skine saw that the object was a ring with a tag on it. On the tag were the numbers which appeared to be stock numbers, and the price of twenty-eight dollars. Considering appellant's possession of the article so tagged, his statement concerning his acquisition of the ring, and his prior behaviour, the police officer concluded that he had either stolen the ring or had bought and received it, knowing it to be stolen merchandise. He thereupon arrested appellant for possession of stolen property, took him outside to the police car where he and O'Rourke "patted down" appellant for weapons, and found none. Appellant was then placed in the rear of the car and driven to the police station. On the way to the station the officers noticed appellant "squirming" on the back seat and moving from where he was originally placed on the seat, to a position behind the driver. When they arrived at the police station they took him out of the vehicle and, in his presence, Erskine conducted a search of the vehicle (which he said was routine procedure) and found the gum wrapper and fourteen gelatin type capsules containing a white powder (later found to be heroin and quinine), which articles were the subject of the motion to suppress.

Appellant did not testify at the hearing, and the testimony of the officers was unrebutted. Nevertheless, defense counsel contend in this Court that the officers were without probable cause to arrest appellant; that, therefore, the search and seizure were illegal and any evidence obtained by the police as the result thereof must be suppressed.

■ The premise of this proposition is faulty as we do not find the arrest illegal. On the contrary, appellant's initial act of fleeing when he first saw the policemen, coupled with his possession of a ring, to which was attached a price tag of twenty-eight dollars, and his statement to the police that he had bought it for twelve dollars, constituted a reasonable basis for the arrest on the ground that appellant had either stolen the ring or that he had possessed it, knowing it to be stolen property.

Therefore, the trial court did not err in overruling the motion to suppress.

Bills of Exceptions No. 2 and 3 are similar in nature. In Bill No. 2 appellant complains of the trial court's overruling his objection to testimony by Detective John L. Evans as to the method by which a user injects narcotics into his system. Bill No. 3 was reserved when the court overruled appellant's objection to the testimony of Detective Evans relating to the preparation of narcotics for injection.

In this Court defense counsel argue that, inasmuch as appellant was charged only with possession of heroin, and not with distribution or injection or with being an addict, the testimony was immaterial and was used by the State solely to prejudice

and inflame the minds of the jurors against him.

■■■ There is no merit in either bill. An essential element of the crime of possessing narcotics is guilty knowledge. The testimony of the witness was for the purpose of showing the procedure followed in the illegal self-injection of heroin and the resulting effects—"track marks", scabs, et cetera—on the person administering the drug. Hence, this expert, demonstrative evidence, when considered with the State's proof of track marks and scabs found on appellant's arms when he was arrested, to show that he was a heroin user, was clearly relevant as tending to establish guilty knowledge. See State v. Smith, 257 La. 896, 244 So.2d 824 (1971).

■■■ At the conclusion of its case the State offered into evidence the gum wrapper, the fourteen capsules, the envelope containing them, and the report of the Crime Laboratory listing the contents of the capsules. Defense counsel objected to the introduction on the ground that there was no testimony that appellant had ever possessed the capsules or that they were taken from his person. Bill of Exceptions No. 4 was reserved when the objection was overruled.

We find no error in the ruling. At the time of the arrest appellant was not searched but merely "patted down" for weapons and could have had the articles on his person without their then being detected. As heretofore shown in our discussion of Bill of Exceptions No. 1, the wrapper and capsules were found under the rear seat of the police car where appellant had sat when he was first placed in the vehicle. This occurred immediately after he was taken from the vehicle and without its having been left alone. The arresting officers testified that prior to taking the car out on the day in question, they had searched it; that only they had used the car since that time; that appellant was the only one to get into the rear of the car; and that because of the snap locks on the doors no one else could have opened them.

We are of the opinion that these circumstances lead to a reasonable inference that the appellant possessed the plastic envelope containing the drug on his person when he got into the police vehicle and thereafter placed it under the seat in an effort to "unload" it before being searched at the station, and it constituted sufficient connection to permit introduction of the evidence. The evidence was admissible, and it was for the jury to determine whether the appellant or some one else had had possession of the drug and placed it under the seat of the car.

Bill of Exceptions No. 5 was reserved to the trial court's overruling of appellant's motion for a new trial. The motion merely recites that "The verdict of the Jury is contrary to the law and evidence", and that

"The bills of exceptions reserved during the trial show error to the prejudice of the defendant." We have already disposed of the latter ground in our consideration of the bills of exceptions themselves.

It has been said innumerable times that a motion for a new trial based simply on the ground that the verdict is contrary to the law and evidence presents nothing for us to review. State v. D'Ingianni, 217 La. 945, 47 So.2d 731 (1950); State v. Stokes, 250 La. 277, 195 So.2d 267 (1967); State v. Ponthieux, 254 La. 482, 224 So.2d 462 (1969); and State v. Anderson, 254 La. 1107, 229 So.2d 329 (1969).

In this Court, defense counsel argue that appellant's guilt was not proven beyond a reasonable doubt and that this is evidenced by the fact that one of the twelve jurors voted for acquittal.

In State v. Daspit, 167 La. 1048, 120 So. 772 (1929), this Court stated the well-established rule that the question of whether the evidence was sufficient to prove the accused's guilt beyond a reasonable doubt "presents only a question of fact as to the guilt or innocence of the defendant, as to which this court has not jurisdiction." This principle has been reiterated so often as to require no further citation of authority. But see also, State v. Stokes, supra; and State v. D'Ingianni, supra.

For the reasons assigned, the conviction and sentence are affirmed.